FILED-ED
2004 NOV 24 PH 2:26
CLERK
U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

BILLY GLOVER, )
                Plaintiff, )
)
       -vs- )
)
)
CITY OF CHICAGO and CHICAGO POLICE )
OFFICERS J. HURLEY #17516, B. MAKA )
#12206) MURPHY #17790, HERRERA #17289, )
SUCHOLKI #18391, RICE #16059, )
BURZINSKI #3450, FINNIGAN #5167, and )
MCGOVERN #4461, )
              Defendants. )

**04C 7655**

No.

JURY DEMANDED

JUDGE DER-YEGHIAYAN

MAGISTRATE JUDGE LEVIN

## COMPLAINT

Now comes the plaintiff, BILLY GLOVER through his attorneys Smith Coffey & Alexander, Ltd. and for his Complaint against the City of Chicago, and Chicago Police Officers J. Hurley #17516, Officer B. Maka #12206, Officer Murphy #17790, Officer Herrera #17289, Officer Sucholki #18391, Officer Rice #16059, Officer Burzinski #3450, Officer Finnigan #5167, and Officer McGovern #4461, states as follows:

## NATURE OF THE CASE

1.     This is a civil action seeking damages against Defendants for committing acts under the color of law, which deprived Billy Glover of rights secured under the Constitution and the laws of the United States.

DOCKETED
NOV 2 0 2004

1

## JURISDICTION

2.      This action is brought pursuant to 42 U.S.C. Sections 1983, and the Fourth, Fifth and Fourteenth Amendments to the United States Constitution. Jurisdiction is founded upon 28 U.S.C Sections 1331 and 1341(3) and (4) and 1343, and the aforementioned constitutional and statutory provisions. Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to Section 1367 to hear and decide claims arising out of state law.

## THE PARTIES

3.      The Plaintiff Billy Glover is a thirty-two year old, African American citizen, who resides in the city of Chicago, Cook County, Illinois, and at all times relevant hereto is a citizen of the United States of America.

4.      The Defendants, the Chicago Police Officer J. Hurley #17516, Officer B. Maka #12206, Officer Murphy #17790, Officer Herrera #17289, Officer Sucholki #18391, Officer Rice #16059, Officer Burzinski #3450, Officer Finnigan #5167, and Officer McGovern #4461, (collectively the "individual defendants") are Caucasian persons employed by the City of Chicago, Chicago Police Department. They are all sued individually.

5.      The Defendant City of Chicago (hereinafter "City") is a municipality duly incorporated by the laws of the State of Illinois, and is and was the employer of the police personnel named herein as agents of the City. It is sued directly under the Monell Count for failure to supervise train, control and discipline the defendant officers.

6.      At all times relevant hereto, all defendant officers were acting under color of the statutes, customs, regulations, ordinances, and usage of the State of Illinois, and the Chicago Police Department ("CPD"), and within the scope of their employment with the Defendant City.

## FACTS

2

7.     On November 25, 2003 Billy Glover was living in, Chicago, Illinois at his grandparents home in the 9100 Block of South Harvard. Glover was working at Brown's Construction, and he also helped take care of his ailing grandfather.

8.     On or About November 25, 2003, around 11:30 P.M., Glover was in his automobile, a 1999 GMC truck, and he had just pulled up to the rear of his grandparent's home.

9.     After parking his truck and while still sitting in his truck after having taken the keys out of the ignition, Glover saw three police cars converge on the area he was parked. He noticed lights from flashlights moving towards his truck. The defendant Officers then shined their flashlights into Glover's face.

10.     Glover had not committed any traffic violations, nor was he violating any laws of the United States, or the State of Illinois, or the City of Chicago.

11.     Glover was not under the influence of alcohol or drugs.

12.     Officer Maka came to the driver's side of Glover's car and used his fist to bang on the window. Glover rolled down the driver's side window and asked the officers "what was the problem". Neither officer answered Glover's question.

13.     At this point in time at least four Officers were outside the car. One Defendant officer told Glover to get out. Glover again asked them "what was the problem." None of the officers answered Glover's question.

14.     One Defendant officer asked "where do you live." Glover said he lived at this house.

15.     Defendant Officers asked Glover to produce a license. Glover provided the officer with a valid Illinois driver's license, insurance and registration.

3

16.     Defendant officers then ordered Glover to get out of the car. Immediately after this command Officer Maka punched Glover in the face with a closed fist, knocking him back disorienting Glover.

17.     Maka then reached through the window and opened the door. He grabbed Glover, pulling him out of the car, then struck and pushed him to the ground.

18.     Four officers then dragged Glover into the alley. Glover pleaded, "What did I do, what did I do." The Officers said "Shut up" and proceeded to pin Glover face down on the ground with the weight of their bodies and force of their arms. They then cuffed Glover behind his back so hard that the cuffs were cutting into his wrists. A Defendant Officer searched Glover's person. Glover was held face down in the alley with force for ten to fifteen minutes.

19.     During this time two officers went into Glover's truck and searched the truck. The Officers tore up the vehicle, turning over all his personal property and damaging the truck's interior. They tore out the air vents in the back of the vehicle and pulled back his dashboard panel. Nothing illegal was found on Grover's person or inside his truck.

20.     An Officer then proceeded to drive Glover's truck from the parking area into the alley throughway.

21.     After the Defendant officers searched the truck, two Defendant officers went to the back of the house in the block of 9100 S. Harvard. Two additional Defendant Officers went to the front.

22.     In the home was Glover's Grandmother, Ardie Johnson, and Glover's Grandfather, Clisby Johnson, who rent the home. Mrs. Johnson is in her late seventies and Mr. Johnson is in his eighties. Mr. Johnson had severe health problems, including Alzheimer's disease.

4

23.     When the Officers knocked on the door Mr. Johnson was in bed. Mrs. Johnson heard the knocking on the back door and thought it was Glover. She began opening the door.

24.     As Mrs. Johnson was opening the door, a Defendant officer pushed through her physically knocking her back. The Defendant Officers then, without a warrant or consent of any resident, searched the house. The Officers came into Mr. Johnson's bedroom. They tore up the other bedroom. The Defendant Officers took from the house a hunting shotgun and ammunition for the gun belonging to Pierre D. Glover. Pierre had a Valid Illinois Firearm Owner's Identification Card, a receipt in his name for the Mossberg Model 500 shot gun taken from the home, and valid registration of the weapon. Pierre Glover lived in the home with his grandparents for long periods of time. Pierre had moved to a new address but had not yet moved all of his property.

25.     During this time Glover had been taken from the alley and placed into the back of a squad car, still handcuffed. The squad car was driven around to the front of the home.

26.     Glover saw his brother in law, Michael Williams and his sister; Cherylle Williams arrive at the home while the Police were still inside. The Officer in the squad car asked Glover who they were. Glover told them it was his sister and brother in law. The officer began to pull the squad car closer to the house. Glover began to tell the Officer that they were coming to check on his grandparents and that his brother in law was a Sheriff and would see what was going on. The Officer turned back and hit Glover and said "why didn't you tell me that before". The Officer then reversed and pulled the squad car and Glover away from the home. The Officer then communicated to other Officers that Williams was a Sheriff.

27.     Thereafter, certain Officers left the home and another Officer began to take charge and talk to the residents. Glover was taken to the police station. Glover was told that he

5

could go home if he told the Officer where additional guns were. Glover was held that night and then sent to Cook County Jail were he remained until he was bonded out on or about November 27, 2004.

28. In an effort to cover up their illegal search of Glover, and illegal search of Glover's truck and home, the defendants conspired and agreed among themselves to charge Glover with unlawful use of a weapon. The defendants created false police reports that included allegations to support their conspiracy.

29. The Defendant Officers created false police reports in an effort to cover up the fact that Glover's truck was searched. They created false reports in an effort to claim that consent to search was given before the search of the home took place. They created false reports claiming that a consent was voluntarily signed by Glover's grandfather. The created false reports claiming that Glover was not detained or searched before the recovery of the weapon. They created false reports claiming that Glover said he was holding the gun for his brother.

30. All defendant Officers agreed, conspired and discussed how to write the police reports in such a way as to show probable cause to detain Glover, and to show that Glover had been possessing Pierre Glover's weapon illegally, when they well knew that Glover had been stopped and searched illegally and had committed no crimes.

31. To this end the defendant Officers, acting in furtherance of the conspiracy, knowingly filed false charges against Glover and conspired to withhold exculpatory evidence from prosecutors, defense attorneys and the criminal court.

32. Glover, was charged, booked and processed at the police department and then sent to the Cook County Department of Corrections. While at the Cook County Department of Corrections he was processed as a felon, and received a cavity seared for drugs. A bond hearing

6

was conducted the following morning and Glover posted $1000.00 dollars and was released from custody.

33.     Glover had to hire an attorney at a cost of $2000.00 dollars.

34.     In furtherance of the conspiracy Officer Maka perjured himself before the Judge Timothy O'Brien on December 22, 2003 at a preliminary hearing in order to get a finding of probable cause. Maka again perjured himself at the motion to suppress evidence on May 19, 2003.

35.     On July 17, 2004, after eleven court appearances, the case was nolle prossed by the Assistant States Attorney, after a motion to suppress was granted, indicative of the innocence of Glover and the illegality of the searches.

36.     As a direct and proximate result of the malicious actions of the co-conspiring Defendants, Glover was injured, including the loss of his freedom, damage to his reputation, humiliation, pain, suffering the deprivation of his constitutional rights and his dignity, thousands of dollars in attorney's fee to successfully fight the bogus charges, hundreds of hours of lost time, loss of wages, and extreme emotional distress.

## COUNT I
### Against Officers for Section 1983 Fourth Amendment Violations

1-36.     Paragraphs 1 through 36 above are re-alleged here as if fully set forth herein.

37.     The searches and seizures of the plaintiff's person and property, as detailed above, performed willfully and wantonly by the defendants, individually and in conspiracy with each other, were in violation of plaintiff's right to be free of unreasonable searches and seizures under the Fourth Amendment to the Constitution of the United States and 42 U.S.C. sec. 1983.

38.     As a proximate result of the aforementioned Fourth Amendment violations, plaintiff was greatly injured, including the deprivation of his liberty and the taking of his property.  In addition, the violations proximately caused the plaintiff great mental anguish and humiliation, exposed him to public scandal and disgrace, and caused him to incur various expenses, and loss of wages, all to his damage.

WHEREFORE, the plaintiff demands judgment against the individual officers, jointly and severally, for compensatory damages in an amount in excess of FIVE HUNDRED THOUSAND DOLLARS ($500,000) and further demands judgment against each of said defendants, jointly and severally, for punitive damages in an amount in excess of FIVE HUNDRED THOUSAND DOLLARS ($500,000), plus attorneys' fees pursuant to statute and the costs of this action and such other relief as this Court deems just, proper, and equitable.

## COUNT II
### Against Officers, 1983 Action for Due Process Violation

1-36.     Paragraphs 1 through 36 above are re-alleged as if fully set forth herein.

37.     The actions of defendant officers in withholding and concealing material exculpatory evidence necessary for a fair and impartial trial violated Glover's right to Due Process, as guaranteed by the Fourteenth Amendment to the United States Constitution.

38.     As a direct and proximate result of the aforementioned Due Process violation, plaintiff was greatly injured, including the loss of his liberty and his property as detailed above. In addition, the violations proximately caused the plaintiff great mental anguish and humiliation, exposed him to public scandal and disgrace, and caused him to incur various expenses, all to his damage.

8

WHEREFORE, plaintiff demands judgment against the individual officers, jointly and severally, for compensatory damages in an amount in excess of FIVE HUNDRED THOUSAND DOLLARS ($500,000) and further demand judgment against each of said defendants, jointly and severally, for punitive damages in an amount in excess of FIVE HUNDRED THOUSAND DOLLARS ($500,000), plus attorneys' fees pursuant to statute and the costs of this action and such other relief as this Court deems just, proper, and equitable.

## COUNT III
### 1983 Action Against City for Failure to Properly Instruct, Supervise, Control & Discipline

1-40.     Paragraphs 1 through 38 in Count I and paragraphs 37 and 38 of Count II are re-alleged here as if fully set forth herein, as paragraph 1-40.

41.     The Constitutional violations detailed above were only possible for the defendant officers to perpetrate because of the customs, policies, and practices of CPD, whereby the CITY failed utterly to instruct, supervise, control and discipline the defendant officers.

42.     These failures include (1) maintaining an atmosphere and climate where Constitutional violations are not prosecuted or punished, thus encouraging officers to violate rather than respect the Constitutional rights of citizens;  (2) failure to track, notice, act upon, or correct patterns of abuse by officers with multiple complaint files, thus encouraging a climate of Constitutional abuses;  (3) using officers involved in abuse complaints to conduct the internal CPD investigations of the same abuse complaint, thus encouraging a climate where officers feel that any Constitutional abuses will go unpunished;  (4) failure to properly train and supervise officers in proper procedure for stopping and searching of suspects, thus encouraging a climate of abuses;  (5) failure to train, supervise, or punish officers to prevent them from making false police reports.

9

43.     As a direct and proximate result of these failures, plaintiff was greatly injured, including the deprivation of his liberty and property. In addition, the violations proximately caused the plaintiff great mental anguish and humiliation, exposed him to public scandal and disgrace, and caused him to incur various expenses, all to his damage.

WHEREFORE, plaintiffs demand judgment against the CITY for compensatory damages in an amount in excess of FIVE HUNDRED THOUSAND DOLLARS ($500,000), plus attorneys' fees pursuant to statute and the costs of this action and such other relief as this Court deems just, proper, and equitable.

### Count IV
### Malicious Prosecution — State Claim Against City and Officers

1-36. Paragraphs 1 through 36 above are re-alleged here as if fully set forth herein.

37.     By participating in the above-described conspiracy, the individual officers sought to and did in fact maliciously prosecute Billy Glover on false charges for which there was no probable cause, the felony unlawful use of weapons charges from the November 26, 2003 arrest by Officers, which charges were resolved in plaintiff's favor by a State motion to nolle prosse the charges on July 17, 2004, indicative of the innocence of Billy Glover.

38.     It was part of the conspiracy to give ongoing false and perjured testimony in order to incarcerate Billy Glover on the false charge of unlawful use of weapons.

39.     The individual officers proceeded with the charges against the plaintiff knowing they were false.

40.     The CITY is sued in this count pursuant to the doctrine of respondeat superior, in that defendant officers performed the actions complained of while on duty and in the employ of defendant CITY, and while acting within the scope of this employment.

10

41.     As a direct and proximate result of these Constitutional violations, Mr. Glover was damaged, including the value of his liberty for during his incarceration, lost wages, attorneys fees, pain and suffering, and mental and emotional suffering and anguish.

WHEREFORE, plaintiff demands judgment against the CITY and the individual officers, jointly and severally, for compensatory damages in amount in excess of FIVE HUNDRED THOUSAND DOLLARS ($500,000), and further demands judgment against the individual officers, jointly and severally, for punitive damages in an amount in excess of FIVE HUNDRED THOUSAND DOLLARS ($500,000), and further demands attorney fees and the costs of this action, and for such other relief as this Court deems just, proper, and equitable.

## Count V
### Intentional Infliction of Emotional Distress Against CITY and Officers

1-36.     Paragraphs 1 through 36 are re-alleged as if fully set forth herein.

37.     The above detailed conduct by the defendants was extreme and outrageous, exceeding all bounds of human decency.

38.     Defendants performed the acts detailed above with the intent of inflicting severe emotional distress or with knowledge of the high probability that the conduct would cause such distress.

39.     As a direct and proximate result of this conduct, plaintiff did in fact suffer severe emotional distress, resulting in injury to his mind, body, and nervous system, including loss of sleep, mental anguish, nightmares, and flashbacks.

11

40.     The CITY is sued in this count pursuant to the doctrine of respondeat superior, in that defendant officers performed the actions complained of while on duty and in the employ of defendant CITY, and while acting within the scope of this employment.

.       WHEREFORE, plaintiff Billy Glover demands judgment against the CITY and the individual officers, jointly and severally, for compensatory damages in amount in excess of $500,000, and further demands judgment against the individual officers, jointly and severally, for punitive damages in an amount in excess of $500,000, and further demands attorney fees and the costs of this action, and for such other relief as this Court deems just, proper, and equitable.

## COUNT VI
### False Arrest—State Claim against City and Officers

1-36.   Paragraphs 1 through 36 above are re-alleged here as if fully set forth herein.

37.     By the actions detailed above, and by participating in the above-described conspiracy, the individual defendants knowingly sought to and did in fact arrest Glover on false charges for which they know there was no probable cause.

38.     The city is sued in this Count pursuant to the doctrine of respondeat superior, in that defendant officers performed the actions complained of while on duty and in the employ of defendant City, and while acting within the scope of this employment.

39.     As a proximate result of the false arrest, plaintiff was greatly injured, including the deprivation of his liberty, great mental anguish and humiliation, and exposed Plaintiff to public scandal and disgrace, and caused Plaintiff to incur various expenses, and loss of wages, all to his damage.

12

WHEREFORE, the plaintiff demands judgment against the City and individual Defendant Officers, jointly and severally, for compensatory damages in an amount in excess of FIVE HUNDRED THOUSAND DOLLARS ($500,000) and further demands judgment against each of said Officer defendants, jointly and severally, for punitive damages in an amount in excess of FIVE HUNDRED THOUSAND DOLLARS ($500,000), plus attorneys' fees pursuant to statute and the costs of this action and such other relief as this Court deems just, proper, and equitable.

Respectfully submitted,

BILLY GLOVER

By:
One of his attorneys

Christopher Smith
SMITH, COFFEY & ALEXANDER, LTD.
119 N. Peoria Street, Suite 3A
Chicago, Illinois 60607
(312) 850-2600
FAX (312) 850-2704

13



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

# Civil Cover Sheet

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use only in the Northern District of Illinois.

**Defendant(s):CITY OF CHICAGO,and CHICAGO POLICE OFFICERS J. HURLEY 317516, B. MAKA #12206, MURPHY #17790, HERRERA #17289, SUCHOLKI #18391, RICE #16059, BURZINSKI #3450, FINNIGAN #5167, MCGOVERN #4461**

**Plaintiff(s): BILLY GLOVER**

County of Residence:

Plaintiff's Atty:    Daniel S. Alexander
Smith Coffey & Alexander, Ltd
119 N. Peoria, Chicago, IL
60607
312 850-2600

County of Residence:

Defendant's Atty:    **04C 7655**

*JUDGE DER-YEGHIAYAN*
*MAGISTRATE JUDGE LEVIN*

II. Basis of Jurisdiction:    **3. Federal Question (U.S. not a party)**

III. Citizenship of Principal Parties **(Diversity Cases Only)**
Plaintiff:-N/A
Defendant:-N/A

**DOCKETED**

NOV 2 9 2004

IV. Origin :    **1. Original Proceeding**

V. Nature of Suit:    **440 Other Civil Rights**

VI.Cause of Action:    **This cause of action is brought pursuant to 42 U.S.C. sec. 1983, and the United States Constitution**

VII. Requested in Complaint
Class Action:**No**
Dollar Demand:**500,000**
Jury Demand:**Yes**

2004 NOV 24 PM 2: 26
CLERK
U.S. DISTRICT COURT
FILED-EOA

VIII. This case **IS NOT** a refiling of a previously dismissed case.

Signature: _____

1-8

Case: 1:04-cv-07655 Document #: 1 Filed: 11/24/04 Page 15 of 16 PageID #:15

**Date:** 11-24-04

If any of this information is incorrect, please go back to the Civil Cover Sheet Input form using the *Back* button in your browser and change it. Once correct, print this form, sign and date it and submit it with your new civil action. **Note: You may need to adjust the font size in your browser display to make the form print properly.**         Revised: 06/28/00

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

In the Matter of

BILLY GLOVER
V.
CITY OF CHICAGO, ET. AL.

Case Number: **04C 7655**

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

BILLY GLOVER

JUDGE DER-YEGHIAYAN

MAGISTRATE JUDGE LEVIN

| (A) | (B) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME DANIEL S. ALEXANDER | NAME PHILLIP L. COFFEY |
| FIRM SMITH COFFEY & ALEXANDER, LTD. | FIRM SMITH COFFEY & ALEXANDER, LTD. |
| STREET ADDRESS 119 N. PEORIA | STREET ADDRESS 119 N. PEORIA |
| CITY/STATE/ZIP CHICAGO, ILLINOIS 60607 | CITY/STATE/ZIP CHICAGO, ILLINOIS 60607 |
| TELEPHONE NUMBER 312 850-2600    FAX NUMBER 312 850-2704 | TELEPHONE NUMBER 312 850-2600    FAX NUMBER 312 850-2704 |
| E-MAIL ADDRESS SMITHCOFFEYLAW@MSN.COM | E-MAIL ADDRESS |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6202318 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6211340 |
| MEMBER OF TRIAL BAR?   YES ☑   NO ☐ | MEMBER OF TRIAL BAR?   YES ☑   NO ☐ |
| TRIAL ATTORNEY?   YES ☑   NO ☐ | TRIAL ATTORNEY?   YES ☑   NO ☐ |
| | DESIGNATED AS LOCAL COUNSEL?   YES ☐   NO ☒ |

| (C) | (D) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME CHRISTOPHER R. SMITH | NAME |
| FIRM SMITH COFFEY & ALEXANDER, LTD. | FIRM |
| STREET ADDRESS 119 N. PEORIA | STREET ADDRESS |
| CITY/STATE/ZIP CHICAGO, ILLINOIS 60607 | CITY/STATE/ZIP |
| TELEPHONE NUMBER 312 850-2600    FAX NUMBER 312 850-2704 | TELEPHONE NUMBER    FAX NUMBER |
| E-MAIL ADDRESS | E-MAIL ADDRESS |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6201953 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR?   YES ☑   NO ☐ | MEMBER OF TRIAL BAR?   YES ☐   NO ☐ |
| TRIAL ATTORNEY?   YES ☑   NO ☐ | TRIAL ATTORNEY?   YES ☐   NO ☐ |
| DESIGNATED AS LOCAL COUNSEL?   YES ☐   NO ☒ | DESIGNATED AS LOCAL COUNSEL?   YES ☐   NO ☐ |

DOCKETED
NOV 2 9 2004

2004 NOV 24 PA 2:26
FILED
U.S. DISTRICT COURT CLERK

1-2